UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IMG WORLDWIDE, INC.<br>1360 East 9th Street, Suite #100<br>Cleveland, OH  44114-1782 | ) <br> ) <br> ) <br> ) | CASE NO. 1:10-cv-794<br><br>JUDGE O'MALLEY |
| Plaintiff | ) <br> ) | |
| vs. | ) <br> ) | **FIRST AMENDED COMPLAINT FOR**<br>**TEMPORARY RESTRAINING ORDER,** |
| MATTHEW BALDWIN<br>5529 Upton Avenue S.<br>Minneapolis, MN 55410 | ) <br> ) <br> ) <br> ) | **PRELIMINARY AND PERMANENT**<br>**INJUNCTIVE RELIEF, AND**<br>**DAMAGES** |
| Defendant | ) <br> ) | (Jury Demand Endorsed Hereon) |

Plaintiff IMG Worldwide, Inc. ("IMG"), for its First Amended Complaint against

Defendant Matthew Baldwin ("Defendant"), states as follows:

1.      This action seeks injunctive relief and damages as a result of Defendant's

purposeful and premeditated misappropriation of IMG's trade secrets and confidential and

proprietary information as well as his breaches of the non-solicitation provision in the

employment agreement he signed with IMG, and his deletion of IMG files that he took with him

after his resignation from IMG.  The available facts demonstrate that Defendant, almost certainly

with active direction and funding from his new employer, Creative Artists Agency ("CAA"),

followed a detailed scheme to shirk his responsibilities under his employment agreement and the

related common law.  While he was still employed with IMG, Defendant secretly laid the

groundwork to recruit IMG clients away from IMG.  He conspired to interfere with IMG's

business, providing bald-faced lies to IMG management in the process.  All on April 2, 2010, he resigned from IMG, allegedly moved his residency to California, started working at a competitor, contacted many of the clients with whom he had dealt at IMG, and had one of the biggest law firms in the country file a lawsuit in California seeking a declaration that Defendant was no longer bound by any covenants in his IMG employment agreement.  The circumstances of Defendant's relocation to his new employer are so contrived that they themselves are strong evidence of Defendant's measured intent to flout his obligations and injure IMG.

Moreover, a recently performed forensic analysis of Defendant's IMG-provided laptop computer has determined that Defendant had moved confidential and/or proprietary IMG files to an external hard drive weeks ahead of his departure.  Further still, late on April 1, just hours before announcing his resignation, Defendant accessed the laptop with the external drive connected in a manner consistent with copying those files to the external drive.  The files that were moved to the external drive included client employment contracts and draft contracts, and correspondence and contracts related to IMG clients' marketing and business opportunities.  Defendant continued to access and use the laptop, a laptop that contained thousands of confidential and propriety documents of IMG's, for days even after he had resigned.  Subsequently, Defendant deleted many of the documents.  Additional documents were deleted after IMG filed its Complaint in this action.

Defendant's utter disregard for the rights of IMG must be enjoined.

## THE PARTIES

2.      IMG is incorporated in the State of Ohio, with its principal place of business in Cleveland, Ohio.

3.      Defendant Matthew Baldwin is a citizen of Minnesota, residing at 5529 Upton Ave. S., Minneapolis, Minnesota 55410.

4.      Pursuant to his Employment Agreement with IMG ("Employment Agreement," a true and accurate copy of which is attached hereto as Exhibit A), Defendant has consented to the jurisdiction and venue of this Court.  Moreover, his tortious conduct has caused injury in this District, as further alleged below.  Defendant has had extensive contacts with this District with respect to the subject matter of this action.

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there exists a diversity of citizenship, and there is more than $75,000 in controversy, exclusive of interest and costs.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).

## IMG'S BUSINESS

6.      IMG has its principal place of business in Cleveland, Ohio.  IMG engages in the worldwide marketing, management, and production of sports, entertainment, and media products.

7.      Due to the service-oriented and personal nature of its business, IMG's success depends greatly on the strength of the relationships of IMG employees with its clients.  Essentially, such relationships *are* IMG's business.  IMG therefore devotes significant time, effort, and resources to develop its clients and its relationships with its clients.

3

8.      Over the course of many years and through the efforts of its highly skilled personnel, IMG has developed for its use confidential, proprietary, and trade secret information related to its customers and other business matters.  This includes, among other things, marketing plans and strategies, and client lists and information.  Such confidential, proprietary, and trade secret information is essential to the successful conduct of IMG's business.

9.      In the ordinary course of its business, IMG takes and has taken appropriate and reasonable measures to safeguard its confidential information and trade secrets in order to prevent the same from being available to persons other than those authorized by IMG.  Such safeguards include control over computer access, the use of password protection on electronic files and the inclusion of language affirming confidentiality responsibilities in employment agreements like Defendant's.

## DEFENDANT'S EMPLOYMENT WITH IMG

10.      Defendant first worked for IMG as a summer intern while attending law school.  He began to work for IMG full-time on August 20, 2004, and he continued to do so until he voluntarily resigned on April 2, 2010.

11.      Baldwin was hired to assist Gary O'Hagan, head of IMG's Coaches Division.  In this position, Defendant was responsible for, among other things, marketing IMG's services to existing and prospective clients, managing IMG's ongoing commitments to its clients, contract negotiation, media relations, and database administration.  Defendant worked with O'Hagan out of offices near Minneapolis, Minnesota.

12.      Defendant executed his Employment Agreement on August 20, 2004, his first day of full-time employment with IMG.  As a condition of and in consideration for his employment, Defendant agreed to comply with the terms of the Employment Agreement.

4

13.    Prior to joining IMG, Defendant had no experience as a sports agent.

14.    Throughout his employment, Defendant had access to and used IMG's confidential and proprietary business and customer information, including, among other things, IMG's confidential marketing plans and strategies, client lists and information, information about fees and services provided, and the terms of the clients' contracts with their employers.  In particular, he had access to IMG's confidential and proprietary information and trade secrets related to the representation of professional coaches.

15.    The confidential, proprietary, and trade secret information disclosed to Defendant pursuant to the terms of his Employment Agreement was not previously known to Defendant.

16.    The Employment Agreement contains a limited non-solicitation provision in which Defendant agreed that for a period of two years after his last day of employment he would not solicit IMG's clients or certain prospective clients.  Specifically, Defendant agreed to the following:

> Representation of Existing and Prospective Clients, Properties and Customers.  During the Employee's employment with IMG, Employee will not solicit nor represent any client, property or customer on behalf of anyone other than IMG, including on Employee's own behalf.  For the period of two years following the end of Employee's employment with IMG, Employee will not directly or indirectly solicit or represent as a client, on Employee's own behalf or on behalf of another, or be employed by, any person or organization which: (i) was a client of IMG within the eighteen months next preceding the end of Employee's employment with IMG and, further, was a client with whom Employee had dealings while Employee was associated with IMG or was a client with whom IMG employees reporting to Employee had dealings while Employee was associated with IMG; or (ii) was a prospective client of IMG who was actively solicited as such within the twelve months next preceding the end of Employee's employment with IMG and, further, Employee, or IMG employees reporting to Employee, participating in such solicitation.

Employment Agreement, § 6.

17.     In the Employment Agreement, Defendant also agreed to keep IMG's trade secrets and confidential and proprietary information confidential.  Specifically, Defendant agreed to the following:

> Confidentiality.  Employee will not, without the consent of the President or a Senior Vice President or Corporate Vice President of IMG, divulge any information of a confidential, proprietary or trade secret nature relating to IMG or to any of its clients, properties, or customers, to anyone other than authorized personnel of IMG, either during Employee's employment with IMG or at any time thereafter.   During Employee's employment with IMG, Employee will not use any confidential information relating to IMG, its clients, properties or customers, except in the course of Employee's duties.   Following the termination of Employee's employment with IMG, Employee will not make any use of any confidential or proprietary information relating to IMG, its clients, customers or properties.   Disclosures of IMG confidential, proprietary or trade secret information could subject Employee to civil actions or criminal penalties.

Employment Agreement, § 4.

18.     IMG provided all bargained-for consideration to Defendant and has satisfied all conditions precedent.

19.     In the Employment Agreement, Defendant agreed that Ohio law would govern any proceedings arising out of the Employment Agreement.

## DEFENDANT'S RESIGNATION AND UNLAWFUL CONDUCT

20.     In the early months of 2010, Defendant's immediate supervisor, Gary O'Hagan, found that Defendant was becoming increasingly unresponsive, and that Defendant appeared to be keeping information related to IMG's clients and prospective clients from O'Hagan.

21.     In early 2010, Defendant purposely attempted to exclude O'Hagan from business communications with and representations of IMG client and Seattle Seahawks offensive coordinator Jeremy Bates.

22.     Upon information and belief, while still employed by IMG, Defendant solicited the business of Bates on behalf of himself and/or CAA.

23.     Since Defendant's resignation, O'Hagan has learned that, in March 2010, Defendant secretly attended the 2010 Big East Conference men's basketball tournament in New York City – an event frequented by many college coaches as both participants and spectators.

24.     Upon information and belief, while still employed by IMG, Defendant attended the Big East tournament in order to inform coaches at the tournament, including IMG client and Villanova University men's basketball head coach Jay Wright and other clients and potential clients of IMG, that Defendant was planning to resign from IMG.

25.     Upon information and belief, Defendant solicited the business of Wright and other coaches at the Big East Tournament on behalf of himself and/or CAA.

26.     Upon information and belief, in early 2010, while still employed by IMG, Defendant solicited the business of then IMG client and University of Connecticut head football coach Randy Edsall on behalf of himself and/or CAA.

27.     Randy Edsall abruptly terminated his relationship with IMG.

28.     On March 31, two days before he resigned, Defendant received a substantial bonus from IMG.  In connection with receipt of this bonus, rather than expressing any discontent, Defendant told IMG management that he was content at IMG and looked forward to his future with IMG.

29.     On April 1, O'Hagan specifically asked Defendant about his plans to stay with IMG.  Defendant stated that he was content at IMG and had no plans to leave.

30.     Less than 24 hours later, on April 2, 2010 (Good Friday), Defendant abruptly announced his resignation from IMG, effective the same day.  Defendant told O'Hagan that he would be in Florida from April 2 to April 5.

31.     On the same day that Defendant resigned from IMG, he began to work for CAA – a direct competitor of IMG.

32.     O'Hagan has been informed by several IMG clients that they had been informed that Defendant was resigning from IMG and going to work for CAA even before O'Hagan received Defendant's resignation.

33.     Upon information and belief, Defendant solicited the business of these IMG clients, and other clients and prospective clients, on behalf of himself and/or CAA prior to April 2, 2010, while he was still an IMG employee.

34.     Upon information and belief, both prior and subsequent to his resignation, Defendant actively solicited IMG clients in order to induce those clients to leave IMG and transfer representation to CAA.

35.     Upon information and belief, through unlawful and improper means, Defendant misappropriated IMG's confidential, proprietary, and trade secret information and is now using this information to solicit IMG clients and prospective clients.

36.     When he left IMG, Defendant took his IMG-owned laptop computer with him.  Along with hundreds of confidential and sensitive files regarding the contracts IMG clients and prospective clients, as well as other proprietary information and work product of IMG, this laptop contained information underlying an IMG-created trade secret database that contains a

comparative analysis of the contracts of hundreds of college and professional coaches.  The database is a powerful tool that IMG uses to solicit clients and negotiate on their behalf.  IMG spent significant time, effort, and resources in developing and maintaining the database and the supporting information.

37.    IMG did not receive the laptop back from Defendant until April 8. Thereafter, IMG hired a computer forensics firm to examine the laptop for evidence of Defendant's misuse of information.

38.    The forensic examination has determined that Defendant, prior to his resignation, Defendant created an external USB storage drive to which he copied confidential IMG documents.  Further, late on April 1, hours before he offered his resignation and certainly after he had decided to leave, Defendant again accessed the laptop with the external USB storage drive attached.  (See Declaration of Sam Rubin, attached as Exhibit B to IMG's memorandum in support of its Motion for a Temporary Restraining Order.)  The forensic review of the laptop shows that, during the access late on April 1, at least 46 files were accessed in a manner consistent with copying the files to the external drive.  (See Rubin Decl.)  These files included draft and final contracts for IMG clients, marketing materials, and materials related to business opportunities for IMG clients.  (See Exhibit A to the Rubin Decl.)  These files contain and represent confidential and proprietary information and trade secrets belonging to IMG.

39.    The forensic examination determined that Defendant continued to access and use the laptop even after he resigned. On April 3, Defendant again used the computer for several hours.  He again accessed the computer on April 4 and April 6.  (See Rubin Decl.)

40.    The forensic examination also determined that Defendant deleted IMG files from the USB storage drive on April 9, April 14, April 15, and April 16.  Some of these

9

deletions occurred after IMG filed its Complaint in this action, and all occurred after Defendant was fully aware that the initiation of this lawsuit was likely.

41.     Upon his resignation, Defendant took with him paper files containing confidential and proprietary information related to IMG's clients.  An inspection of files returned by Defendant in Minnesota shows that many of the hard-copy files were returned empty.

42.     Upon information and belief, Defendant has disclosed IMG's confidential, proprietary, and trade secret information to CAA, a direct competitor of IMG, and/or used such information while working on its behalf.  This information was not previously known to CAA.

43.     Unless his conduct is enjoined, Defendant will continue to breach his Employment Agreement and misappropriate IMG's trade secrets.

44.     Were Defendant permitted to continue to exploit his knowledge of the confidential, proprietary, and trade secret information of IMG for his own personal gain, and to solicit IMG's clients, IMG would be left with no adequate remedy at law, because the damage to IMG's business, reputation, and goodwill would be incalculable.  It would be difficult for IMG to calculate the lost revenue and lost future business opportunities from clients who transfer their business away from IMG to Defendant and/or CAA.  No amount of money could be sufficient to compensate IMG for such an injury to its business.

45.     IMG seeks prompt injunctive relief, as well as all other remedies available under law, for Defendant's misappropriations and contractual violations.

## COUNT I

### Breach of Contract

46.     IMG incorporates all previous allegations as if fully rewritten.

47.     In consideration for Defendant's employment at IMG, among other things, Defendant agreed that (among other things) he would not solicit certain IMG clients or potential clients while employed by IMG or for two years thereafter except on IMG's behalf, and that he would not disclose IMG's confidential, proprietary, and trade secret information.

48.     Defendant has breached and, unless enjoined, will continue to breach his obligations under the Employment Agreement by soliciting IMG's clients and potential clients and by disclosing and using IMG's confidential, proprietary, and trade secret information.

49.     Upon information and belief, Defendant is continuing to violate his contractual obligations.

50.     IMG has fulfilled all of its obligations under the Employment Agreement, and all conditions precedent to Defendant's full performance have been satisfied.

51.     The non-solicitation provisions of the Employment Agreement are reasonably narrow and protect IMG's legitimate business expectations.  Nothing in the Employment Agreement prohibits Defendant from being employed by CAA or from attempting to develop business with the more than 95 percent of all coaches that fall outside the scope of Section 6 of the Employment Agreement.

52.     The confidentiality provisions of the Employment Agreement prohibit Defendant from disclosing or making use of IMG's confidential and proprietary information and work product materials.

11

53.     As a direct and proximate result of Defendant's breach, IMG has suffered, and will continue to suffer, irreparable harm, loss, and other damage (the exact nature and amount of which is currently impossible to ascertain) through the loss of business, customer relations, profits, and goodwill as a result of Defendant's actions, for which there is no adequate remedy at law.  Unless enjoined, Defendant will continue to breach his obligations under the Employment Agreement.

54.     IMG is also entitled to compensatory damages in an amount to be determined at trial that exceeds $75,000, exclusive of interest and costs.

## COUNT II

## Misappropriation of Trade Secrets

55.     IMG incorporates all previous allegations as if fully rewritten.

56.     During the course of his employment with IMG, Defendant had access to and knowledge of IMG's trade secrets and confidential and proprietary information, as described above.

57.     IMG's confidential, proprietary, and trade secret information is owned and used by IMG in an attempt to obtain an economic advantage over its competitors.

58.     IMG incurred great expense over the course of many years to discover, develop, and assemble the confidential and proprietary information and trade secrets, including the database of coaches' contract information, that are being misused to benefit Defendant.

59.     IMG's confidential, proprietary, and trade secret information is not generally available to IMG's competitors.

60.     IMG has actively sought to preserve the secret nature of IMG's confidential, proprietary, and trade secret information by taking reasonable steps to protect the information and maintain its secrecy.

61.     Defendant was well-aware of the confidential and proprietary nature of IMG's confidential, proprietary, and trade secret information, and of the duty not to use the information without IMG's authorization, to IMG's detriment, or for Defendant's own benefit or for the benefit of any other person or entity.

62.     Upon information and belief, Defendant has willfully, intentionally, maliciously, and by improper means misappropriated, disclosed, and used IMG's trade secrets to unfairly compete against IMG and for his own benefit and the benefit of CAA, a direct competitor of IMG.

63.     The information that has been misappropriated by Defendant is not generally available to the public or IMG's competitors.  It derives independent economic value from not being generally known to other persons who could otherwise obtain economic value from its disclosure or use.

64.     As a direct and proximate result of Defendant's misappropriation of IMG's confidential and proprietary information and trade secrets, IMG has suffered, and will continue to suffer, immediate and irreparable injury and other damages, as set forth above, the exact extent, nature, and amount of which is currently impossible to ascertain.  Unless enjoined, Defendant will continue to misappropriate and/or use IMG's trade secrets.

65.     IMG is entitled to a preliminary and permanent injunction requiring Defendant to return any confidential information that he misappropriated from IMG and to refrain from further using IMG's confidential information.

66.     IMG is also entitled to compensatory damages from the Defendant in an amount to be determined at trial that exceeds $75,000, excusive of interest and costs.

67.     In addition, IMG is entitled to punitive damages in an amount to be determined at trial and attorneys' fees.

## COUNT III

### Breach of Duty of Good Faith and Duty of Loyalty

68.     IMG incorporates all previous allegations as if fully rewritten.

69.     Upon information and belief, Defendant has violated his duties of good faith and loyalty arising under his Employment Agreement and relationship with IMG in that, while employed by IMG, Defendant secretly planned to leave the employ of IMG, took actions that were not in the best interests of IMG, and schemed with others to deprive IMG of its clients and trade secrets.

70.     As a consequence of the foregoing, IMG has suffered and will continue to suffer irreparable harm and loss.

## COUNT IV

### Spoliation of Evidence

71.     IMG incorporates all previous allegations as if fully rewritten.

72.     At various times, including after IMG filed its Complaint in this action, and upon information and belief, in some instances after Defendant's counsel represented to the Court and to IMG that Defendant would return all IMG documents to IMG, Defendant willfully deleted IMG documents from the USB storage drive for the purpose of disrupting IMG's ability to prove its claims in this action.

73.     More specifically, Defendant willfully deleted files from the USB storage drive on April 9, April 14, April 15, and April 16 for the purpose of disrupting IMG's ability to prove its claims in this action.

74.     Defendant willfully deleted documents at least as late as April 16, 2010, which is the date of the Court's telephonic hearing on IMG's motion for a temporary restraining order in this action during which Defendant's counsel orally agreed to return the USB storage drive to IMG.

75.     At all relevant times, including when he deleted IMG files on April 9, 2010, Defendant was fully aware that the initiation of this action was probable.  As of April 15, 2010, Defendant was actually aware that this action was filed and pending.

76.     The documents willfully deleted on April 16, 2010, included client lists and spreadsheets comparing coaches' salaries.  Both client lists and databases containing comparative information related to coaches were identified as containing confidential and proprietary information in IMG's initial Complaint and its Memorandum in Support of its Motion for a TRO which was also filed on April 15, 2010.

77.     While IMG has been able to identify files that Defendant deleted, it is unknown at this time – and cannot be known without discovery of Defendant and his new employer – whether additional files were destroyed by Defendant and/or whether Defendant's deletion of files has affected related evidence such as computer metadata.

78.     Upon information and belief, Defendant's willful destruction of evidence has risked disrupting IMG's ability to prove its claims in this action and directly and proximately caused irreparable damage to IMG.

79.     IMG is entitled to compensatory damages in an amount to be determined at trial that exceeds $75,000, exclusive of interest and costs, and injunctive relief. In addition, because such acts were malicious and in bad faith, IMG is entitled to punitive damages in an amount to be determined at trial and attorneys' fees.

## COUNT V

## Breach of the Standstill Agreement

80.     IMG incorporates all previous allegations as if fully rewritten.

81.     On April 16, 2010, during the Court's telephonic hearing in this action, the parties orally agreed to a standstill agreement. Pursuant to that agreement, Defendant agreed to return to IMG immediately the documents that he copied onto the USB storage drive.

82.     The oral standstill agreement was subsequently incorporated into a written Stipulated Standstill Agreement.

83.     As memorialized in ¶ *b* of the Stipulated Standstill Agreement, which the parties have and which was previously provided to the Court, Defendant agreed to "immediately return to IMG all materials belonging to IMG or relating to the business of IMG." It further specifies that "[t]he documents to be returned specifically include but are not limited to the external USB hard drive identified in the Complaint and discussed in the teleconference before the Court (the 'USB Drive'). Defendant agrees to return the original USB Drive to IMG."

84.     As memorialized in ¶ *c* of the Stipulated Standstill Agreement, Defendant agreed that "[t]o the extent Defendant discovers, after execution of this agreement, that he inadvertently failed to return any confidential or proprietary materials belonging to IMG or relating to the business of IMG, Defendant agrees to keep in strict confidence and not to disclose

or use in any manner such information.  Defendant will promptly contact IMG to arrange for the return of such information."

85.     Upon information and belief, after the telephonic hearing with the Court, and in violation and breach of the standstill agreement between the parties, Defendant willfully deleted documents from the USB storage drive before it was returned to IMG.

86.     IMG has fulfilled all of its obligations under the standstill agreement between the parties and all conditions precedent to Defendant's full performance have been satisfied.

87.     Upon information and belief, Defendant's willful violation and breach of the standstill agreement between the parties has disrupted IMG's ability to prove its claims in this action and directly and proximately caused irreparable damage to IMG.

88.     IMG is entitled to compensatory damages in an amount to be determined at trial that exceeds $75,000, exclusive of interest and costs, and injunctive relief.

WHEREFORE, IMG requests that judgment be entered in its favor and against Defendant Matthew Baldwin as follows:

(a)     A temporary restraining order, as well as a preliminary and permanent injunction, enjoining and restraining Defendant for two years from the date of Defendant's resignation, directly or indirectly, individually or on behalf of or in concert with any other person or entity, from soliciting, attempting to solicit, or otherwise interfering with IMG's relationship with any client or prospective client of IMG with whom Defendant had dealings while at IMG, or otherwise violating the terms of his Employment Agreement.

(b)     A temporary restraining order, as well as a preliminary and permanent injunction, ordering Defendant to keep in strict confidence and not to disclose in any manner any confidential, proprietary, and trade secret information of IMG to any person, group, or entity or use such information for any purpose whatsoever.

(c)     That Defendant be compelled to identify and disclose to IMG any and all communications that either he or any other employee, officer, or agent of CAA had with any client or prospective client of IMG related in any way to (1) Defendant's resignation from IMG; (2) Defendant's employment with CAA; and/or (3) the potential or possibility of Defendant providing services for the client or prospective client after Defendant's resignation from IMG on April 2, 2010.

(d)     That this Court order that Defendant immediately return to IMG all information or any other materials belonging to IMG, or relating to the business of IMG, and all copies thereof in any form, keeping no copy for himself.

(e)     An award of actual, consequential, and incidental damages in favor of IMG and against Defendant in an amount to be proven at trial, but in no event less than $75,000.

(f)     That Plaintiffs be awarded punitive damages by reason of Defendant's willful and malicious acts, in an amount to be determined at trial.

(g)     That Plaintiff be awarded reasonable attorneys' fees and costs.

(h)     That this Court order such other relief as may be just and required under

the circumstances of the case.

Respectfully submitted,

/s/ Joseph A. Castrodale
Joseph A. Castrodale (0018494)
John M. Alten (0071580)
Brad A. Sobolewski (0072835)
ULMER & BERNE LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, OH  44113
Tel:  (216) 583-7000
Fax:  (216) 583-7001
jcastrodale@ulmer.com
jalten@ulmer.com
bsobolewski@ulmer.com
Attorneys for Plaintiff IMG Worldwide, Inc.

OF COUNSEL:

Mark C. Holscher
Jeffrey S. Sinek
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA  90071
Tel:  (213) 680-8190
Fax:  (213) 680-8500
mark.holscher@kirkland.com
jeff.sinek@kirkland.com

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

/s/ Joseph A. Castrodale
Joseph A. Castrodale (0018494)
ULMER & BERNE LLP
One of the Attorneys for Plaintiff
IMG Worldwide, Inc.

19

**CERTIFICATE OF SERVICE**

A copy of the foregoing First Amended Complaint for Temporary Restraining Order, Preliminary and Permanent Injunctive Relief, and Damages was filed electronically with the Court on May 12, 2010.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court system.


/s/ Joseph A. Castrodale
Joseph A. Castrodale (0018494)
ULMER & BERNE LLP
One of the Attorneys for Plaintiff
IMG Worldwide, Inc.


29430.35 \1837267