UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IMG WORLDWIDE, INC. | ) | CASE NO. 1:10-cv-794 |
| | ) | |
| Plaintiff | ) | JUDGE O'MALLEY |
| | ) | |
| vs. | ) | **IMG WORLDWIDE, INC.'S** |
| | ) | **RESPONSE TO DEFENDANT'S** |
| MATTHEW BALDWIN | ) | **MOTION TO DISMISS OR TRANSFER** |
| | ) | |
| Defendant | ) | |
| | ) | |

## I. INTRODUCTION

Defendant's briefing in support of his Motion to Dismiss or Transfer ignores the obvious and substantial connections that this action has to this District which are sufficient to keep venue in this Court whether or not the forum selection clause in the Employment Agreement is directly applicable. Defendant tries to sidestep the obvious facts that he is a member of the Ohio bar who breached an Employment Agreement that is governed by Ohio law and contains an Ohio forum selection clause, and that throughout his employment with IMG, he was in constant communication with IMG's Ohio headquarters, which he relied on for marketing, legal, and other support. Defendant also tries to sweep under the rug the compelling and unexplained evidence that he not only misappropriated over 7,000 IMG files, many of which contained IMG's confidential, proprietary, and trade secret information, but he also deleted many of these IMG files from his USB device before returning it to IMG in an attempt to conceal evidence of his misappropriation. This was in violation of the parties' standstill agreement in this case. The fact that most of the confidential information at issue in this lawsuit has a situs in

this District nails the coffin shut on Defendant's venue argument. *See*, *e.g.*, *Harry Miller Co. v. Carr Chem.*, 5 F. Supp.2d 295, 298 (E.D. Pa. 1998); *Argent Funds Group, LLC v. Schutt*, Case No. 3:05-cv-1456, 2006 U.S. Dist. LEXIS 60469 (D. Conn. June 27, 2006).[1]

Focusing on these facts makes it clear that his motion should be denied and this action should proceed in this Court.

## II. Venue is Proper in This District Because It Is Where a Substantial Part of the Events Giving Rise to IMG's Claims Occurred

### A. Defendant Misappropriated Ohio Trade Secrets and Other Confidential IMG Information

Defendant wholly ignores the most fundamental tie that this action has to this District: Most of the trade secret, confidential, and proprietary documents that Defendant stole were created, developed, and housed in Cleveland. *See* Declaration of Gary O'Hagan attached as Exhibit B ("O'Hagan Decl. III"). As shown below, this alone is sufficient to confer venue in this Court.

Cleveland is the headquarters of IMG and the situs of much if not most of the confidential information at issue in this lawsuit. For example, highly confidential marketing presentations that IMG made to prospective coaches were drafted by IMG's marketing department in Cleveland and then emailed to O'Hagan and Defendant for their use. O'Hagan Decl. III, at ¶ 4. And beyond the fact that individual presentations for individual coaches were created in Cleveland, the general format of IMG's presentations was developed and continuously refined in Cleveland. *Id.* And now these documents – which IMG relies on in competing against other agencies for clients – were taken by Defendant, and by his own admission at least some were downloaded to a computer belonging to one of IMG's largest competitors.

---

[1] All unreported cases are attached as Exhibit A.

Similarly, Defendant took confidential contracts between IMG and its clients, and between IMG's clients and their employers. These contracts were reviewed, edited, and drafted in part by IMG's legal department in Cleveland. O'Hagan Decl. III, at ¶¶ 5-6. And hard copies of the contracts are maintained in Cleveland. *Id.*

Moreover, with the exception of email data, **all other electronic data files and documents worked on or used by IMG's Minnesota office have at all times been maintained on computer servers located in Cleveland.** *See* Declaration of Joe DeTullio, ¶¶ 2-3, attached as Exhibit C (""DeTullio Decl.") This would include many of the documents and files that Defendant took with him to CAA – including, for example, Word documents, PowerPoint presentations, and spreadsheets. DeTullio Decl. at ¶ 3. This is obviously a clear connection to this District which confers venue on this Court. *See The Tranzonic Companies v. Markowitz*, Case No. 1:04-CV-2422, 2005 U.S. Dist. LEXIS 9865 (N.D. Ohio May 24, 2005) (Matia, J.) (fact that purchase orders issued from the company's computer system in Ohio weighed in favor of finding venue proper in Ohio).[2]

In short, the fact that many of the trade secrets, confidential, and proprietary documents that Defendant took can trace their origin and situs in part or in whole to this District supports venue in this District. *See*, *e.g.*, *Harry Miller Co. v. Carr Chem.*, 5 F. Supp.2d 295, 298 (E.D. Pa. 1998) ("trade secrets have a situs in their state of origin"). And the harm caused by the misappropriation of those trade secrets is felt by IMG in this District. *See Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) ("Because [the employer] was

---

[2] The Coaches Division also relies on IMG's Cleveland headquarters for support related to billing its clients. O'Hagan Decl. III, at ¶ 13. Invoices are created in and sent from Cleveland, payments are made by coaches to Cleveland, reports related to billing and payment status are generated in Cleveland, letters to clients who are behind in payments are created in and sent by the Cleveland headquarters, and collection is handled by the Cleveland office. *Id.*

headquartered in Rhode Island, this district is one of the places where the … misappropriation of trade secrets occurred and where the harms from [that] tort[] are felt"). *Cf. The RightThing, LLC v. Brown*, Case No. 3:09-cv-135, 2009 U.S. Dist. LEXIS 7464 at *17 (N.D. Ohio Feb. 2, 2009) (denying employee's motion to transfer and "place[ing] significance on the potential damages that misappropriation of trade secrets may cause in the State of Ohio that would be substantiated by mostly Ohio witnesses" despite the fact that the former employee worked in California).

The significance of this fact for venue purposes is demonstrated by *Argent Funds Group, LLC v. Schutt*, Case No. 3:05-cv-1456, 2006 U.S. Dist. LEXIS 60469 (D. Conn. June 27, 2006). The Connecticut-based employer in that case brought claims against a Florida-based former employee for misappropriation of trade secrets, unfair trade practices, and violation of the Computer Fraud and Abuse Act. The employer accused the former employee of taking confidential information that she had accessed via the internet from the employer's server and downloaded to laptops and hard drives. The former employee argued that venue in Connecticut was improper, noting that she worked for the employer in Florida, she did not transact any business in Connecticut, and the computers at issue were in Florida. *Id.* at *2.

The Court rejected this argument, noting that "[s]ubstantial events material to the claim occurred in Connecticut; Schutt would not have been able to obtain the confidential information had the Connecticut file server never transferred the information to her via the internet. The Connecticut file servers thus played a central role in the events that gave rise to the claim, and were one of the means by which the defendant allegedly stole the confidential information." *Id.* at *5-6. The Court concluded, therefore, that "it is immaterial that Schutt does not transact any business or have many contacts with Connecticut, because a substantial event underlying plaintiff's claims occurred in Connecticut." *Id.*

4

The Court further noted that "[e]ven if a substantial part of the events or omissions giving rise to the claim had not occurred in Connecticut, venue would still be appropriate here pursuant to section 1391(b) because a substantial part of property that is the subject of the action is situated in Connecticut. The intellectual property at issue in this case is Argent's confidential business information, which is located in large part on the file servers in Connecticut. Therefore, venue is appropriate in Connecticut either because the property at issue is located here, or because a substantial part of the events giving rise to the claim occurred in Connecticut." *Id.* at \*6-7.

Here, the Court should reach exactly the same conclusion for exactly the same reasons. Throughout his tenure at IMG, Defendant worked in a two-employee office in Minnesota that was wholly dependent on IMG's Cleveland headquarters. And many of the documents that Defendant took and that are at issue in this case are trade secret and other confidential and proprietary materials created in this District and maintained on IMG's Cleveland-based computer server. O'Hagan Decl. III, at ¶¶ 2-3. Venue is proper here since both the trade secret and breach of confidentiality agreement claims support venue in the Northern District of Ohio.

B. **Defendant's Motion to Transfer Asks the Court to Ignore the General Substantial Ties that this District Has to this Action**

Not only does the Defendant fail to address the connection between Cleveland and the trade secrets and other confidential information that he misappropriated, he also attempts to sidestep the other substantial ties between this action and this District with a flippant "[s]o what?" (Defendant's Reply at 3) followed by citations to a handful of cases – none from the Sixth Circuit Court of Appeals or any District Court in this Circuit – that purportedly stand for the separate propositions that the place where the harm occurred, a choice-of-law clause

5

designating a particular state's law, communications by the employee with a venue, the location of the plaintiff's headquarters, and the origination of the employee's paycheck are each insufficient by itself to establish venue.

But here, *all* of these factors tying the substance of this dispute to this District *and more* are present. And Defendant cannot dispute that courts have time and time again found these factors to be relevant in determining whether venue is proper. *See*, *e.g.*, *The Tranzonic Companies v. Markowitz*, Case No. 1:04-CV-2422, 2005 U.S. Dist. LEXIS 9865 (N.D. Ohio May 24, 2005) (Matia, J.) and *ALTA Analytics Inc. v. Muuss*, 75 F. Supp.2d 773 (S.D. Ohio 1999), discussed *infra*.

For example, there are many cases in which courts have found that the fact that a particular District is the place where the plaintiff is headquartered and the harm occurred to that plaintiff weighs in favor of finding venue to be proper. *See*, *e.g.*, *Renteria v. Ramanlal*, 2009 U.S. Dist. LEXIS 4127 at *15-18 (D. Ariz. Jan. 9, 2009) (finding venue proper in district where the plaintiff was headquartered because "the place where the harm occurred is relevant to determining venue" and "throughout the negotiations, Defendants were well aware that they were entering into business deals with parties centered in Arizona"); *N.Y. Mercantile Exch. v. Central Tours Int'l, Inc.*, 1997 U.S. Dist. LEXIS 9242 (S.D.N.Y. Jul. 1, 1997) ("Plaintiff also alleges that it suffered financial loss in New York as a result of defendants' acts. The place where the harm occurred is also relevant for venue purposes"); *Elemary v. Holzmann*, 533 F. Supp.2d 144, 150 (D.D.C. 2008) (same); *Kirk v. N.Y. State Dep't of Educ.*, 2008 U.S. Dist LEXIS 24322 at *10-12 (W.D.N.Y., March 24, 2008) ("It is clear that in some cases, the fact that the Plaintiff suffers harm in a particular judicial district is sufficient to satisfy § 1391(b)(2)"); *Astro-Med, Inc.*, *supra*; *The RightThing*, *supra*.

Likewise, the fact that the Defendant agreed in his Employment Agreement to be bound by Ohio law weighs in favor of finding venue to be proper in this District. *See Premcor Ref. Group, Inc. v. Born, Inc.*, 2006 U.S. Dist. LEXIS 935 (N.D. Ohio 2006) ("Since the choice of law provision in the contract entered into between the parties requires the application of Ohio law, this is another reason for retention of venue in this Court"). And communications to a corporate headquarters by telephone and e-mail, use of a corporate computer system, and the receipt of a paycheck from a corporate headquarters have also been considered relevant in analyzing venue challenges. *See Dental Health Prod., Inc. v. Ringo*, 2009 U.S. Dist. LEXIS 38328 at *7-8 (E.D. Pa. 2009).

The facts in this action are virtually identical to those considered by this Court in *The Tranzonic Companies v. Markowitz* and the Southern District of Ohio in *ALTA Analytics Inc. v. Muuss*. In *Tranzonic*, a former employee accused of misappropriating trade secrets and breaching his employment agreement claimed that venue was improper in this District because he had worked for the Ohio-based employer in Florida, not Ohio. Much like the Defendant here, the former employee claimed that he only traveled to the employer's Cleveland headquarters "between one and three times over the past five years." 2005 U.S. Dist. LEXIS 9865 at *4.

In analyzing the former employees challenge to venue, the court first noted that "[v]enue may be proper in more than one district. The facts are not weighed to see which district has a more substantial connection to events giving rise to the action. So if a substantial part of the events occurred here, venue would still be proper in this District even if a majority of events occurred elsewhere." *Id.* at *3. The Court concluded that venue in this District was proper, noting among other things that the defendant was employed by an Ohio company, transactions at

issue originated in Ohio with the issuance of purchase orders from the company's computer system, and invoices from the transactions were sent to Ohio to be paid.

*ALTA* is even more directly on point. In that case "a forensic analysis of Defendant's ALTA laptop allegedly reveal[ed] that Defendant transferred an entire directory containing confidential ALTA business information from the laptop to another computer." *Id.* at 776-77. This defendant, who worked for the Ohio-based company in Illinois and executed his employment agreement in Illinois, argued that venue was improper in Ohio. Like the Defendant here, the former employee claimed that his position "required him to visit Ohio only on a handful of occasions." *Id.* He never had any sales in Ohio. And he argued that his employment agreement contained only an Ohio choice-of-law clause and not an Ohio forum-selection-clause.

But the *ALTA* court noted that the former employee – much like the Defendant here – frequently emailed and spoke by telephone with "ALTA's customer support, payroll, accounting, travel, development, and human resources departments in Ohio." *Id.* As is true here, "[p]erformance of Defendant's duties also required the use of written material and computer data that Plaintiff shipped from Ohio." *Id.* And the employer argued that the suit arose "from Defendant's breach of a contract that is governed by Ohio law and from tortious conduct outside the state of Ohio that resulted in injury to an Ohio corporation." *Id.*

The Court concluded that "[t]he evidence has established that Ohio has a substantial connection given the contractual relationship that gave rise to the cause of action. Thus, venue is proper in this Court pursuant to § 1391(a)(2)." *Id.* at 783. The same result should be reached here.

### C.     Defendant Consented to Litigation of this Dispute in this Court

Finally, venue is supported by the language in the Employment Agreement. Defendant – a member of the Ohio bar – explicitly agreed in his Employment Agreement that IMG could seek injunctive relief in this Court to enforce the confidentiality and non-solicitation provisions in his Employment Agreement pending arbitration. His attempts to now minimize his consent by limiting it to only situations in which IMG seeks injunctive relief pending arbitration does not change the fundamental fact that he signed a contract with an Ohio employer in which he agreed that injunctive relief for his breach of that contract very well could be litigated in this Court. Defendant was therefore always aware that any breach of the confidentiality and non-solicitation provisions of his Employment Agreement could result in him being hailed into this District. Now that he has chosen to waive the arbitration clause in the Employment Agreement through the content of his improper anticipatory filing in California, the fact that IMG is seeking interim injunctive relief here without also requesting arbitration is immaterial. It is disingenuous and illogical for him to now argue that claims for his breaches of his Employment Agreement and his misappropriation of IMG's trade secret, confidential, and proprietary information cannot be litigated in this District.

### D.     IMG's Motion to Dismiss the California Action Should Be Decided Before the Defendant's Motion to Transfer This Action

In order to avoid contradictory decisions and to preserve IMG's rights while the California Court is considering IMG's Motion to Dismiss, even were this Court to consider favorably the Motion to Transfer, at this early stage prior to discovery, such motion should not be ruled upon until the California Court decides the pending Motion to Dismiss. That motion is

proceeding expeditiously with IMG's reply brief due tomorrow, May 13, and a hearing scheduled for May 27.[3]

### E. The First to File Rule Does Not Bar IMG's Request for Injunctive Relief

Defendant continues to rehash his "first to file" argument without putting forth any new arguments. IMG therefore relies on its earlier briefing explaining why the arguments of the Defendant – who stole over 7,000 IMG files and downloaded them to a competitor's computer – that he is the "true plaintiff" in this action is a nonstarter. Similarly, Defendant's supposed shock at being hailed into court by IMG – in spite of the fact that he admits that he took the files and that his new boss at CAA is soliciting IMG clients – must be discarded out of hand. IMG is the true plaintiff, and the first-to-file rule does not apply, especially in light of the very short period of time between the filing of Defendant's anticipatory California action and the filing of this one. *See Global Mfg. Assocs. v. Avery Outdoors, Inc.*, Case No. 1:07-cv-1006, 2008 U.S. Dist. LEXIS 10069 at *9 (N.D. Ohio Jan. 29, 2008) ("As Plaintiff filed the instant case merely three weeks before Defendant filed the Tennessee action, the court finds that the first-filed rule does not weigh in favor of Plaintiff"); *see also* 17 MOORE'S FED. PRAC. § 111.13[1][o][ii][B]; *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995) ("the [first-filed] rule is usually disregarded where the competing suits were filed merely days apart"); *Affinity Memory & Micro v. K&O Enters.*, 20 F. Supp.2d 948, 954-55

---

[3] Although venue is clearly appropriate in this district, if Defendant's motion is granted, then this case should be transferred to the District of Minnesota, which is where Defendant's IMG office was located during his entire tenure with IMG. Defendant's proposed venue, the Central District of California, has no connection whatsoever to Defendant's employment with IMG or the development and creation of the trade secret, confidential, and proprietary information that Defendant stole. Of course, this conclusion is even more compelling if the California court dismisses Defendant's declaratory judgment action.

(E.D. Va. 1998) (disregarding first-to-file rule where second action filed two weeks after the first).

Critically, Defendant specifically acknowledged in his Employment Agreement that he "agrees that any breach of this Agreement could cause irreparable harm to IMG and that in the event of such breach, IMG shall have, in addition to any and all remedies of law, the right to an injunction, specific performance or other equitable relief to prevent any violation of Employees' obligations hereunder." (Employment Agreement § 10(e)). This is exactly the type of relief sought in this action, and it is appropriate for this Court to proceed with the injunctive relief requested by IMG. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007) (holding that the district court in the second-filed action abused its discretion in denying plaintiff's motion for a TRO, reasoning that the district court's "reliance on the first-to-file doctrine [was] misplaced, [and] a proper application of the first-to-file rule would have led the district court to the conclusion that comity did not counsel against issuing a preliminary injunction").

### III. IMG's Claims for Spoliation and Breach of the Standstill Agreement Are Directly Tied to This District

Upon learning from its forensic computer experts that Defendant continued to delete IMG files after this complaint was filed, IMG amended its Complaint to include causes of action for spoliation[4] of evidence and breach of the standstill agreement entered into by the parties. These claims are based on the fact that (1) Defendant attempted to destroy substantial evidence directly relevant to this case after the Complaint was filed **in this District**; and (2) the

---

[4] Spoliation is recognized as an independent tort in Ohio. *See Damron v. CSX Transp., Inc.*, 184 Ohio App.3d 183, 195 (Ohio Ct. App. 2009) ("A claim for relief alleging intentional spoliation of evidence constitutes a cause of action separate from the claims for relief to which the evidence would relate.")

11

deletions continued up to and including April 16 – the date that Defendant's counsel agreed with IMG before this District Court that all computer records would be returned to IMG. Both claims are obviously substantially and directly related to acts and events occurring in this District. The spoliation claim is derived from Defendant's improper actions in this litigation, and which caused injury here. And the breach of the standstill agreement relates to an agreement that Defendant, who was represented by Cleveland counsel at the April 16 hearing before this Court, made in the course of this litigation pending in this District. On the basis of these two claims alone, venue is proper here.

**IV.     Defendant's Attempt to Argue that None of the Over 7,000 Files that He Stole from IMG are Trade Secrets Must Be Rejected**

Although styled as a "reply in support of his motion to transfer," Defendant uses his Reply brief to make a futile attempt to argue that none of the thousands of files that he took from IMG are trade secrets. These misguided arguments focused on the merits of IMG's misappropriation claim have no bearing on Defendant's Motion to Transfer. The Court need not address the merits of IMG's claims in order to determine whether venue is proper in this court. *See*, *e.g.*, *The Tranzonic Companies* and *ALTA Analytics Inc.*, *supra*.

But in any event, even a cursory review of the types of documents that Defendant took makes it perfectly clear that Defendant secretly copied confidential, proprietary, and trade secret information and downloaded them to his CAA computer.[5] Three categories of documents will be addressed below in order to demonstrate the fallacy of Defendant's arguments.

---

[5] In addition to arguing to this Court that the thousands of documents that he took contain no trade secret, confidential, or proprietary information despite the clear evidence to the contrary, Defendant's counsel has also erroneously told the Wall Street Journal that IMG has "manufactured" its claims related to the stolen documents. *See* O'Hagan Decl. III, at ¶ 2. He made this comment despite the fact that Defendant has yet to offer IMG or this Court a valid explanation for why he deleted relevant documents from his stick drive.

12

1. **<u>Information Related to IMG's Rates</u>**

# REDACTED

Not surprisingly, courts routinely find such information to be a trade secret entitled to protection. *See*, *e.g.*, *Hoover Transp. Servs. v. Frye*, 77 Fed. Appx. 776, 782 (6th Cir. 2003) (holding that contract rates within the trucking industry are trade secrets which may be protected through injunctive relief); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) ("the defendants had access to Basic's pricing information and could use that information to underbid Basic"); *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1 (1st Cir. 2009) (noting that the defendant had access to trade secrets "including confidential marketing, pricing, and customer information"); *Wyatt Tech. Corp. v. Malvern Instruments Inc.*, 2009 U.S. Dist. LEXIS 66097 (C.D. Cal. July 29, 2009) (noting that a compilation of data, including customer invoices and pricing, can be deserving of trade secret protection); *Philip Elecs. N. Am. Corp. v. Hope*, 631 F. Supp.2d 705, 721 (M.D.N.C. 2009) ("Customer pricing lists, cost information, confidential customer lists, and pricing and bidding formulas may constitute trade secrets").

Not only would such information related to IMG's rates, as well as marketing presentations and other materials used to recruit coaches, be valuable to a competitor such as CAA with respect to competing against IMG for similar coaches, it could also be potentially used by an IMG competitor to compete against IMG for the representation of the specific coach that particular confidential documents deal with.  As Defendant's new boss at CAA acknowledges in confirming CAA is pursuing IMG's clients and prospects, there are many instances in which even a coach with a long-term contract may require the services of an agent, as "[c]ontract negotiations occur frequently during a coach's career: (a) when a coach is hired; (b) when a coach is terminated; (c) at the end of a contract period; (d) if the club or university wants to add certain duties to the coach's contract; (e) if the coach is having a particularly successful season; or (f) if any unexpected circumstances arise during a contract period.  An

agent must be ready to represent his coaching client whenever the need arises." Declaration of Trace Armstrong ¶ 7. And, of course, endorsement deals can arise regularly.

### 2. IMG's Clients' Confidential Information

Defendant still has failed to address the fact that many of the documents that he took contain information that is confidential to IMG's clients.[6] Defendant agreed in his Employment Agreement to keep such information confidential. Not only could the disclosure of non-public contracts, redlines of those contracts, negotiation notes, settlement communications, personal emails, and other private client information be professionally and personally harmful to IMG's clients, it would also cause damage to IMG's reputation, goodwill, and client relationships. Not surprisingly, IMG clients have expressed their dismay and anger with the fact that Defendant took their contracts and other personal information with him to CAA without their permission. O'Hagan Decl. III, at ¶¶ 7, 10.

Defendant's claim that information related to negotiations and contracts is sometimes shared with the media does nothing to affect IMG's clients' expectation of privacy. First, the vast majority of IMG's clients never disclose such details to the media. And in those

---

[6] Defendant has likewise failed to address that he was contractually prohibited from misappropriating *confidential* information in addition to *trade secret* information. Ohio law draws a distinction between the two categories, and recognizes that it is easier to establish that information is "confidential" than it is to establish that it is "trade secret." *See Interstate Service Ins. Agency v. McIntire*, Case Nos. C-890346, C-890399, 1991 Ohio App. LEXIS 20 (Ohio Ct. App. Jan 9, 1991) ("confidential information need not rise to the level of a trade secret to be the subject of a valid non-disclosure agreement"); *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260 (Ohio Ct. App. 2000) (distinguishing between confidential information and trade secret information).

instances when material is disclosed, it is done with the permission of the client, in a limited and selective fashion, and solely to gain strategic advantages for the client.[7]

Moreover, in addition to documents related to clients' contracts and negotiations, Defendant misappropriated other, personal communications between IMG and its clients. Defendant admits as much with respect to at least one of the documents that he took, acknowledging that "Exhibit 11 [to the O'Hagan II Declaration] may be personal to the coach's wife . . . ." (Defendant's Reply at 14). IMG's clients had a right to expect that such documents would remain confidential, and Defendant was contractually bound to keep them confidential.

### 3. Documents Demonstrating IMG's Business Plans and Strategies

The extreme nature of Defendant's arguments is perhaps best demonstrated by his attempt to argue that IMG's Coaches Division's monthly reports to IMG's headquarters are not trade secret, confidential, and proprietary.

As an initial matter, it should be noted that Defendant makes no effort to explain why the monthly report for February 2010 – which he drafted – is marked "CONFIDENTIAL" if it is, in fact, not a confidential document. O'Hagan Decl. III, at ¶ 12. Instead, he focuses his efforts on arguing that the list of potential IMG recruits that is attached to the report is not a trade secret because "[m]ultiple agencies are **probably** recruiting the same coaches, and those agencies **probably** know which other agencies are doing so." (Defendant's Reply at 14) (emphasis added). Not only is this statement qualified to the point that it is worthless, it is also unsupported by any affidavit or other evidence.

---

[7] Defendant asserts that he disclosed clients' contracts during presentations that he made to law schools. To the extent that he did so, it was without the permission or knowledge of Gary O'Hagan or anyone else at IMG. O'Hagan Decl. III, at ¶ 11.

But even setting aside the list of potential clients that IMG is targeting, Defendant makes no effort whatsoever to address the remainder of the report, which provides a "[s]tatus update of new business projects", an "[o]verview of challenges facing the business", and a "[f]inancial assessment and strategy to exceed financial goals." The reason is simple: As is apparent simply from the headings of these sections, such a document detailing IMG's strategies, plans, strengths, and weaknesses is a confidential document that would be extremely valuable in the hands of a competitor like CAA. It is a trade secret entitled to protection. *See Avery Dennison Corp. v. Kitsonas*, 118 F. Supp.2d 848 (S.D. Ohio 2000); *Patio Enclosures, Inc. v. Four Seasons Mktg. Corp.*, Civ. Case No. 22458, 2005 Ohio App. LEXIS 4469 (Sept. 21 2005); *Alta Analytics Inc. v. Muuss*, 75 F.Supp.3d 773 (S.D. Ohio 1999); *Prosonic Corp. v. Stafford*, 539 F.Supp.2d 999 (S.D. Ohio 2008).

Whether these and other documents that Defendant stole are confidential trade secrets is exactly the issue that this Court should decide. As there is no misappropriation claim pending in Defendant's California declaratory judgment action – and no claim for spoliation or breach of the standstill agreement based on Defendant's deletion of IMG's files – this dispute should be litigated and decided here.

## IV. CONCLUSION

Venue is proper in this District, and this action should proceed so that IMG can obtain the relief that it seeks to protect it from Defendant's violation of his Employment Agreement, thefts of trade secrets and confidential information, and tortious conduct. Defendant's Motion to Dismiss or Transfer should be denied.

17

Respectfully submitted,

/s/ Joseph A. Castrodale
Joseph A. Castrodale (0018494)
John M. Alten (0071580)
Brad A. Sobolewski (0072835)
ULMER & BERNE LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, OH  44113
Tel:  (216) 583-7000
Fax:  (216) 583-7001
jcastrodale@ulmer.com
jalten@ulmer.com
bsobolewski@ulmer.com

Attorneys for Plaintiff

OF COUNSEL:

Mark C. Holscher
Jeffrey S. Sinek
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA  90071
Tel:  (213) 680-8190
Fax:  (213) 680-8500
mark.holscher@kirkland.com
jeff.sinek@kirkland.com

**CERTIFICATE OF SERVICE**

A copy of the foregoing was filed electronically with the Court on May 12, 2010.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court system.

/s/ Joseph A. Castrodale
Joseph A. Castrodale (0018494)
ULMER & BERNE LLP
One of the Attorneys for Plaintiff
IMG Worldwide, Inc.

1836127v1