**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **IMG WORLDWIDE, INC.,** | : | Case No. 10-CV-794 |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN M. O'MALLEY** |
| v. | : | |
| **MATTHEW BALDWIN,** | : | **OPINION & ORDER** |
| **Defendant.** | : | |

Before the Court are: (1) Defendant Matthew Baldwin's Motion to Change/Transfer Venue or Dismiss Plaintiff's Amended Complaint (Doc. 38) ("Motion to Dismiss or Transfer"); and (2) Plaintiff IMG Worldwide, Inc.'s ("IMG") Motion for Expedited Discovery (Doc. 39). Both of these motions are fully briefed and ripe for adjudication. For the reasons articulated below, the Court **STAYS** proceedings in this case pending: (1) resolution of IMG's motion to dismiss filed in concurrent proceedings in the United States District Court for the Central District of California; and (2) the California Court's decision as to whether proceedings should be transferred here.

**I. BACKGROUND**

IMG engages in worldwide marketing, management, and production of sports, entertainment, and media products. (Doc. 30 at ¶ 6.) On August 20, 2004, Baldwin executed an Employment Agreement with IMG ("the Employment Agreement") and began working in IMG's Minnesota office in its Coaches Division, which represents head coaches and assistant coaches in professional and college sports. The Employment Agreement contains a confidentiality provision which provides, in part, that:

> Employee will not, without the consent of the President or a Senior Vice President or Corporate Vice President of IMG, divulge any information of a confidential, proprietary or trade secret nature relating to IMG or to any of its clients, properties,

or customers, to anyone other than authorized personnel of IMG, either during Employee's employment with IMG or at any time thereafter.

(Doc. 30-1 at ¶ 4.) The Agreement also contains the following restrictive covenant:

During Employee's employment with IMG, Employee will not solicit nor represent any client, property or customer on behalf of anyone other than IMG, including on Employee's own behalf. For the period of two years following the end of Employee's employment with IMG, Employee will not directly or indirectly solicit or represent as a client, on Employee's own behalf or on behalf of another, or be employed by, any person or organization which: (i) was a client of IMG within the eighteen months next preceding the end of Employee's employment with IMG and, further, was a client with whom Employee had dealings while Employee was associated with IMG or was a client with whom employees reporting to Employee had dealings while Employee was associated with IMG; or (ii) was a prospective client of IMG who was actively solicited as such within the twelve months next preceding the end of Employee's employment with IMG and, further, Employee, or IMG employees reporting to Employee, participated in such solicitation.

(*Id*. at ¶ 6.)[1] The Employment Agreement provides that it "shall be interpreted and enforced in accordance with the substantive laws of the State of Ohio." (*Id*. at ¶ 11.)

---

[1] The Employment Agreement provides, in part, that "the parties agree to submit to arbitration any dispute related to the employment relationship and agree that the arbitration process shall be the exclusive, final and binding means for resolving disputes which the parties cannot themselves resolve." (Doc. 30-1 ¶ 9.) The arbitration provision further provides that it

shall not prevent IMG from obtaining injunctive relief from a court of competent jurisdiction to enforce the obligations of [the Agreement's confidentiality and non-solicitation provisions] for which IMG may obtain provisional relief pending a decision on the merits by the arbitrator. Employee consents to the jurisdiction of Ohio courts for such purpose.

(*Id*.). This Court requested and obtained supplemental briefing from the parties as to: (1) whether the parties intend to seek arbitration; and (2) whether the parties have waived the right to do so. (Doc. 29.) IMG stated that it does not intend to seek arbitration and that Baldwin waived his right to do so by filing the California Action. (Doc. 31.) In response, Baldwin argued that he does not believe he has waived his right to have the issues raised in this case determined by an arbitrator, though he has not sought to do so. (Doc. 35 at 3.) Accordingly, while the Employment Agreement contains a mandatory and exclusive arbitration agreement, both parties have ignored that fact.

2

In April 2010, Baldwin resigned from IMG, moved to California, and joined Creative Artists Agency ("CAA"), a competitor of IMG's located in Los Angeles. IMG alleges that, while Baldwin was still employed by IMG, he "secretly laid the groundwork to recruit IMG clients away from IMG" and "conspired to interfere with IMG's business" in the process. (Doc. 30 at 1-2.) IMG further alleges that Baldwin took his IMG-owned laptop with him when he resigned, along with "hundreds of confidential and sensitive files regarding the contracts IMG clients and prospective clients, as well as other proprietary information and work product of IMG." (*Id*. at ¶ 36.)

On April 2, 2010, Baldwin sued IMG in the Central District of California asking that court to declare the non-solicitation and arbitration provisions in his Employment Agreement void and unenforceable under California law ("the California Action").

Subsequently, on April 15, 2010, IMG filed this lawsuit against Baldwin, asserting breach of contract, misappropriation of trade secrets, and breach of the duty of good faith and duty of loyalty Baldwin owed IMG under the Employment Agreement. (Doc. 1.) Like the claims asserted in the California Action, these claims all arise from Baldwin's Employment Agreement. Contemporaneously, IMG filed a Motion for Temporary Restraining Order (Doc. 4) seeking to prevent Baldwin from violating the terms of the Employment Agreement and from using or otherwise disclosing IMG's trade secrets in violation of that Agreement.

This Court conducted a telephone conference on April 16, 2010, during which the parties agreed to enter into a Stipulated Standstill Agreement ("the Standstill Agreement"). Pursuant to the Standstill Agreement, Baldwin agreed, among other things, to: (1) comply with the restrictive covenant in his Employment Agreement pending resolution of IMG's motion for a temporary restraining order; and (2) return to IMG the external USB drive onto which he copied IMG

documents.

On April 22, 2010, IMG moved the California Court to dismiss Baldwin's declaratory judgment action, arguing that: (1) the "first to file" doctrine should not apply because Baldwin's complaint was an anticipatory strike; and (2) because Baldwin's complaint is limited to the enforceability of the non-solicitation and arbitration provisions, the California Action cannot provide complete relief on all claims between the parties.

On May 12, 2010, IMG filed an Amended Complaint in this case adding two new claims against Baldwin: spoilation of evidence and breach of the Standstill Agreement. (Doc. 30.)[2]

CAA terminated Baldwin's employment on May 21, 2010. IMG alleges, and Baldwin does not appear to dispute, that CAA terminated Baldwin at least in part "due to his copying and subsequent deletion of IMG files." (Doc. 41 at 4.)

On May 27, 2010, in the California Action, the Court issued a tentative ruling indicating that it "is inclined to deny [IMG's] motion to dismiss, but would entertain a motion to transfer this matter to the Northern District of Ohio." (Doc. 38-2 at 6.) In the tentative ruling, the Court found that Baldwin's conduct in filing the California Action was not an "anticipatory strike" such that the "first to file" rule would not apply. The California Court requested and obtained supplemental briefing from the parties to address Baldwin's status as a California employee in light of his termination from CAA. At that time, it was unclear whether Baldwin intended to stay in California or return to Minnesota.

On June 8, 2010, Baldwin filed the instant Motion to Dismiss or Transfer, arguing that venue is not proper in this Court and that the action should be dismissed or transferred to the Central

---

[2]IMG's filing of the Amended Complaint rendered Baldwin's Motion to Change/Transfer Venue or Dismiss Complaint (Doc. 8) moot.

4

District of California pursuant to the "first to file" doctrine. (Doc. 38.) IMG filed its response on July 12, 2010 asserting that: (1) venue is proper in this Court because it is where a "substantial part" of the events giving rise to IMG's claims occurred; (2) Baldwin consented to litigating disputes in this Court; and (3) the "first to file" rule does not apply because the California Action "is a convoluted anticipatory strike" and because issues presented in both cases are not identical. (Doc. 41.) On July 26, 2010, Baldwin filed his reply in support and, on August 5, 2010, IMG sought and subsequently obtained leave to file a sur-reply in response. (Doc. 51.) Similarly, on August 10, 2010, Baldwin sought and obtained leave to file a sur-surreply in support of the Motion to Dismiss or Transfer. (Doc. 52.)

At this stage, Baldwin asserts that he intends to remain in Los Angeles and, as of the end of July 2010, he is considering two potential job offers: one to join a sports and entertainment law firm and the other to become a sports agent. (Doc. 48 at ¶¶ 4-6.)

On July 22, 2010, the California Court held oral argument to address IMG's Motion to Dismiss in light of the parties' supplemental briefing and Baldwin's decision to remain in California. During the hearing, the Court again indicated that it is inclined to deny IMG's Motion. (Doc. 49-3 at 5.) The California Court then issued a second tentative ruling in which it states that it will wait for this Court to decide whether it intends to keep this case before it will determine whether to transfer the California Action to this Court. (Doc. 49-4 at 3.)

## II. ANALYSIS

While both parties discuss the "first to file" rule in their briefing and seemingly agree that a single court should hear and decide this controversy, they dispute which court is the most appropriate to do so, and which principles should be applied in making that determination. The

5

threshold issue before the Court is simple: which court – the California Court or this Court – should make the "first to file" determination.

The "first to file" rule is a "well-established doctrine that encourages comity among federal courts of equal rank." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (citations omitted). The rule provides that, "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Id*. (citations omitted).

This Court has consistently maintained a bright-line rule that the first-filed court should apply the "first to file" rule and should determine whether to retain jurisdiction. *See Cavaliers Operating Co., LLC v. Ticketmaster*, No. 1:07CV2317, 2007 U.S. Dist. LEXIS 80226, *5-7 (N.D. Ohio Oct. 30, 2007) (O'Malley, J.); *Bionix Dev. Corp. v. Veteran Med. Prods.*, No. 3:05CV7387, 2006 U.S. Dist. LEXIS 50263, *8-9 (July 24, 2006) (O'Malley, J.); *Beverlly Jewerlly Co. v. Tacori Enters.*, No. 1:06cv1967, 2006 U.S. Dist. LEXIS 85359, *7 n.2 (N.D. Ohio Nov. 13, 2006) (O'Malley, J.) ("[T]his Court follows the rule that the court in which the case was first filed should determine whether to retain jurisdiction."). In other words, the court in which the first action was filed determines which case should go forward. *Daimler-Chrysler Corp. v. General Motors Corp.*, 133 F.Supp.2d 1041, 1042 (N.D. Ohio 2001); *Wynne v. Commemorative Air Force*, No. 3:06-cv-122, 2006 U.S. Dist. LEXIS 60980, *5 (S.D. Ohio Aug. 28, 2006) (noting that the "majority of courts hold that it is the first-filed court that should apply the first-to-file rule" and collecting cases).

The role of the second-filed court with respect to the "first to file" rule is to: (1) evaluate the chronology of the actions; and (2) determine whether the parties and issues in the two cases are substantially similar. *Cavaliers Operating Co.*, 2007 U.S. Dist. LEXIS 80226 at *7 (citing *Plating*

6

*Res., Inc. v. UTI Corp.*, 47 F.Supp.2d 899, 903-904 (N.D. Ohio 1999)).

Because the California Action was filed on April 2, 2010, and this case was filed on April 15, 2010, it is clear that this is the second-filed court.

As to the Court's second determination, the Court finds that the parties and issues here are substantially similar to those in the California Action. To satisfy the "first to file" rule, the parties and issues need not be identical, but must be "substantially similar." *Cavaliers Operating Co.*, 2007 U.S. Dist. LEXIS 80226 at *9 (citing *Plating Res., Inc.*, 47 F.Supp.2d at 903). For example, in *Bionix*, this Court found that, although the first-filed declaratory judgment action in Michigan included additional claims that were not raised in the action before this Court, they arose "from the same general set of facts alleged in this action." *Bionix*, 2006 U.S. Dist. LEXIS 50263 at *4-5 n.1. As such, this Court found that the cases involved "substantially the same issues" and the additional causes of action did not remove the case from the realm of the "first to file" rule. *Id*. at *7.

Here, the parties involved in both cases are identical. With respect to the issues involved, both disputes require interpretation of the Employment Agreement between Baldwin and IMG. Baldwin's first-filed declaratory judgment action in California seeks to clarify the enforceability and validity of the non-solicitation and arbitration provisions in the Employment Agreement. In this case, the Amended Complaint asserts claims relating to Baldwin's alleged breach of: (1) the non-solicitation provision of the Employment Agreement; and (2) the confidentiality provisions of the Employment Agreement. Although the trade secret claims asserted in this case are not present in the California Action, they relate to the same issue: the parties' rights and obligations under the Employment Agreement. And, although the instant action involves additional claims for spoilation of evidence and breach of the Standstill Agreement between the parties, they, too, stem from the

7

same underlying set of facts involving Baldwin's alleged breach of the Employment Agreement.[3] The Court concludes, therefore, that the issues involved in both cases substantially overlap and that the distinctions between the cases with respect to the claims asserted are not sufficient to remove this case from the "first to file" framework.[4] *See Bionix*, 2006 U.S. Dist. LEXIS 50263 at *7-8.

IMG argues that the California Action was filed as an "anticipatory strike" such that the "first to file" rule should not apply. It is well-established that a district court has discretion when applying the "first to file" rule, and that factors weighing against enforcement include "extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*, 16 Fed. Appx. 433, 437 (6th Cir. 2001) (citation omitted). Because this is the second-filed court, it would be inappropriate for this Court to evaluate whether the circumstances of this case justify an exception to the "first to file" rule. IMG's arguments are more appropriately presented to the California Court for its consideration, and, indeed, already have been presented there in IMG's Motion to Dismiss.

The Court concludes that the California Court should decide whether this case should go forward in that forum or be transferred to this Court. Although no formal binding order has been issued, the California Court has twice indicated that it is inclined to deny IMG's Motion to Dismiss, which means that both cases will be pending simultaneously. That Court has also expressed a

---

[3]This is particularly true because the Standstill Agreement requires that Baldwin comply with the restrictive covenant in the Employment Agreement and return confidential information to IMG. Both of these issues relate directly to Baldwin's obligations under the Employment Agreement.

[4]Although the parties do not directly address the issue in their briefing, despite IMG's claim that the California Court cannot provide complete relief to it, it appears that all claims pending in this case could be raised as permissive counterclaims in the California Action under Rule 13(b) of the Federal Rules of Civil Procedure.

8

willingness to consider a motion to transfer. Despite this invitation, IMG has not filed a motion to transfer in the California Action. The California Court has, however, indicated that it might consider transferring the case *sua sponte*. This Court will defer to the California Court's decision as to which case should go forward.

Because the Court finds that the "first to file" rule requires that the Court stay proceedings in this case, the Court need not, at this time, reach the parties' arguments regarding whether venue is proper in this district. With respect to IMG's Motion for Expedited Discovery (Doc. 39), the Court defers to the California Court as to whether the parties can commence discovery at this stage.

### III. CONCLUSION

For the foregoing reasons, proceedings in this case are **STAYED** pending: (1) resolution of IMG's Motion to Dismiss which is now pending in the United States District Court for the Central District of California; and (2) the California Court's decision as to whether it will retain jurisdiction or transfer the California Action to this Court or elsewhere. The parties are hereby **ORDERED** to file a notice with this Court when the Central District of California adjudicates these issues.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley<br>**KATHLEEN McDONALD O'MALLEY**<br>**UNITED STATES DISTRICT JUDGE**

**Dated: August 11, 2010**